JS-6

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| LUIS MARTIN GONZALEZ ELIAS,<br><br>Plaintiff,<br><br>vs.<br><br>INTEGON PREFERRED INSURANCE COMPANY,<br><br>Defendant. | Case No.: 2:24-cv-01981- WLH-RAOx<br><br>**ORDER GRANTING MOTION TO REMAND [9]** |

Before the Court is Plaintiff Luis Martin Gonzalez Elias's ("Plaintiff") Motion to Remand. (Mot., Docket No. 9). For the following reasons, the Motion is **GRANTED**.

**I.     BACKGROUND**

This is an action for insurance bad faith for refusal to properly and timely pay uninsured motorist benefits under Plaintiff's policy. (Notice of Removal, Docket No. 1, Ex. 1 ("Compl.") ¶ 1). On May 14, 2021, Plaintiff was seriously injured in a car accident with an uninsured motorist while driving his daughter's car. (*Id.* ¶¶ 15, 98). At the time, Plaintiff alleges, he had an insurance policy with Defendant Integon Preferred Insurance Company ("Defendant") that provided for uninsured motorist

benefits. (*Id.* ¶ 97). Plaintiff alleges that when he requested payment from Defendant, Defendant "unreasonably and unjustifiably fail[ed] to timely and fully pay [his] claims under the subject policy." (*Id.* ¶ 104). It is undisputed, however, that Defendant "ultimately decided to extend coverage and paid the uninsured motorist limit of $15,000," plus payment for the damages to the vehicle.[1] (Opp'n, Docket No. 12 at 2; *see also* Decl. of Eric Bryan Seuthe in Supp. of Mot., Docket No. 9-1 ¶ 9).

On February 9, 2024, Plaintiff brought this action against Defendant in the Los Angeles County Superior Court. (*See generally id.*). He asserts four claims for (1) breach of the implied covenant of good faith and fair dealing, (2) fraud, (3) intentional misrepresentation, and (4) negligent misrepresentation. (*Id.*). He seeks general and special damages, punitive/exemplary damages, attorney's fees and costs for this action, and interest. (*Id.* at 29, "Prayer for Relief").

On March 12, 2024, Defendant removed this action to federal court on the basis of diversity jurisdiction. (Notice of Removal). Defendant states that Plaintiff and Defendant are citizens of different states. (*Id.* ¶ 8). Moreover, though Plaintiff does not specify an amount of damages in his Complaint, Defendant asserts that, based on the facts alleged in the Complaint and the outcomes of similar cases in California, the amount-in-controversy minimum of $75,000 is met. (*Id.* ¶¶ 4–7).

On April 12, 2024, Plaintiff filed the instant Motion to Remand. (Mot.). Plaintiff does not contest that he and Defendant are citizens of different states, but he asserts that Defendant has not met its burden to show the amount in controversy exceeds $75,000. (*Id.*). Therefore, Plaintiff argues, this Court has no subject matter jurisdiction over the case.

---

[1] Though this is not stated in the Complaint or Notice of Removal, Defendant makes this assertion in its Opposition to the Motion to Remand, so it is properly considered on this Motion. *See Woolsey v. State Farm Gen. Ins. Co.*, 672 F. Supp. 3d 1018, 1025 (C.D. Cal. 2023) ("When determining the amount in controversy, district courts are allowed to considered [sic] evidence submitted subsequent to the notice of removal, including evidence submitted in conjunction with an opposition to a motion to remand.")

## II. ANALYSIS

Under 28 U.S.C. § 1332(a), a district court "shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs," and there is complete diversity of citizenship between the parties. Pursuant to 28 U.S.C. § 1441(a), an action may be removed from a state court to a federal district court if the district court would have had "original jurisdiction" over the action had it been filed in that court.

On a motion to remand, "[t]he removal statute is strictly construed, and any doubt about the right of removal requires resolution in favor of remand." *Moore-Thomas v. Alaska Airlines, Inc.*, 553 F.3d 1241, 1244 (9th Cir. 2009) (citing *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992)). When a plaintiff moves to remand on the basis that the amount-in-controversy requirement is not met, and the complaint does not specify a damages amount, "the removing defendant must prove by a preponderance of the evidence that the amount in controversy requirement has been met." *Campbell v. Hartford Life Ins. Co.*, 825 F. Supp. 2d 1005, 1007 (E.D. Cal. 2011) (quotations omitted). To meet this standard, the defendant must point to "allegations in the complaint and in the notice of removal" and provide "summary-judgment-type evidence relevant to the amount in controversy." *Chavez v. JPMorgan Chase & Co.*, 888 F.3d 413, 416 (9th Cir. 2018). "The amount in controversy may include 'damages (compensatory, punitive, or otherwise) and the cost of complying with an injunction, as well as attorneys' fees awarded under fee shifting statutes.'" *Id.* (quoting *Gonzales v. CarMax Auto Superstores, LLC*, 840 F.3d 644, 649 (9th Cir. 2016)).

### A. Attorney's Fees and Costs

Attorney's fees "may … be considered in determining the amount in controversy if such fees are recoverable by plaintiff, either by statute or by contract." *Campbell*, 825 F. Supp. 2d at 1009 (citing *Galt G/S v. JSS Scandinavia*, 142 F.3d 1150, 1156 (9th Cir.1998)). Under California law, attorney's fees "are recoverable '[w]hen an insurer's tortious conduct reasonably compels the insured to retain an attorney to obtain the

- 3 -
ORDER

benefits due under a policy.'" *Id.* (quoting, with alterations, *Brandt v. Superior Court*, 37 Cal.3d 813, 815 (1985)). "A district court may reject the defendant's attempts to include future attorneys' fees in the amount in controversy," however, "if the defendant fails to satisfy [its] burden of proof." *Fritsch v. Swift Transp. Co. of Ariz., LLC*, 899 F.3d 785, 795 (9th Cir. 2018).

Defendant has not satisfied its burden of proof here. Defendant estimates Plaintiff's attorney's fees at $71,700 based on 239 hours of work on this litigation—including 40 hours to prepare for and conduct depositions and 100 hours for a 7-day trial—at the rate of $300 per hour. (*Id.*). Defendant arrived at this estimate based on Defendant's counsel's "experience and specific factors present in the case." (Decl. of Tyler R. Austin in Supp. of Opp'n, Docket No. 12-1 ¶ 4). While the Court appreciates the experience of Defendant's counsel in litigating similar cases, his declaration setting out the above estimates is not "summary-judgment-type" evidence. *Chavez*, 888 F.3d at 416. Defendant's counsel does not explain what "specific factors present in the case" lead him to make the above estimates. *Cf. Sley v. USAA Cas. Ins. Co.*, No. 5:16-cv-04882-HRL, 2017 WL 2114773, at *3 (N.D. Cal. May 16, 2017) (in insurance bad faith case, finding defendant's attorney's fees estimate "too speculative" because defendant failed to support time and rate estimates with facts). Defendant's estimate of attorney's fees is not supported by a preponderance of the evidence, and the Court declines to consider the estimate in calculating the amount in controversy.

### B. Punitive Damages

"As with attorneys' fees, punitive damages may be considered when determining the amount in controversy if they are recoverable as a matter of state law." *Woolsey*, 672 F. Supp. 3d at 1027 (citing *Gibson v. Chrysler Corp.*, 261 F.3d 927, 945 (9th Cir. 2001)). Here, Plaintiff seeks punitive damages for breach of the implied covenant of good faith and fair dealing. (Compl. ¶ 36). Under California law, punitive damages are available in this type of action if "the defendant has been guilty of oppression, fraud,

or malice ….." Cal. Civ. Code § 3294. They are therefore properly included in the Court's calculation of the amount in controversy.

When the plaintiff has not specified a punitive damages amount, "the removing party 'may introduce evidence of jury verdicts in cases involving analogous facts' in order to establish probable punitive damages." *Aguilar v. Wells Fargo Bank, N.A.*, No. 15-cv-01833-AB-SPX, 2015 WL 6755199, at *6 (C.D. Cal. Nov. 4, 2015) (quoting *Simmons v. PCR Tech.*, 209 F. Supp. 2d 1029, 1033 (N.D. Cal. 2002)). For such cases to serve as evidence of damages, "the cases must be factually identical or, at a minimum, analogous to the case at issue." *Id.* at *5 (quoting *Mireles v. Wells Fargo Bank, N.A.*, 845 F. Supp. 2d 1034, 1055 (C.D. Cal. 2012)).

Defendant provides as an example a single case in which the jury awarded punitive damages, in the amount of $100,000. (Opp'n at 8 (citing *McCoy v. Progressive West Ins. Co.*, 2007 WL 2068578 (Cal. Super. Mar. 29, 2007)). *McCoy* is materially distinguishable from this case, however. There, the plaintiff filed an insurance claim after his car was stolen. *Id.* The defendant insurance company let the claim languish for one year before ultimately denying it. *Id.* The defendant based its denial on its contention that "its investigation of the claim had determined that it was fraudulent and that the theft was staged." *Id.* Here, while Plaintiff similarly alleges that Defendant let his claim languish for an extended period of time, this case eis unlike *McCoy* in that Defendant ultimately approved Plaintiff's claim and paid him $15,000, plus the cost of the damage to Plaintiff's daughter's car. Moreover, there is nothing to indicate that Defendant wrongly accused Plaintiff of filing a fraudulent claim, as the defendant did in *McCoy*. *McCoy* is thus not sufficiently analogous to serve as evidence of punitive damages in this case. *Cf. Woolsey*, 672 F. Supp. 3d at 1028 (finding defendant's case examples were not sufficiently analogous to establish punitive damages because plaintiffs did "not allege[] a similar type of misconduct"); *Sley*, 2017 WL 2114773, at *4 (finding defendant's "proffered exemplars" were not sufficiently analogous because they "involved conduct more egregious than that alleged here").

Because Defendant has failed to provide a case similar enough to establish the amount of punitive damages at stake, the Court will not consider Defendant's punitive damages estimate in calculating the amount in controversy.

### C. **Emotional Distress Damages**

Similarly, Defendant does not meet its burden to establish, by a preponderance of the evidence, the emotional distress damages at stake in this case. "Establishing probable emotional distress damages is done the same way as for punitive damages— by introducing evidence of jury verdicts from cases with analogous facts." *Reyes v. Staples Off. Superstore, LLC*, No. 19-cv-07086-CJC-SKX, 2019 WL 4187847, at *4 (C.D. Cal. Sept. 3, 2019). Defendant points to three cases, including *McCoy*, that it claims are analogous to this one for the purpose of establishing that "the average emotional distress recovery in … similar jury verdicts and settlements … was $329,667." (Opp'n at 7–9 (citing *White v. GEICO Indem. Co.*, 2014 WL 1394317 (Cal. Super. Mar. 18, 2014); *McCoy*, 2007 WL 2068578; *Martinez v. Mercury Ins. Co.*, 2014 WL 3845738 (Cal. Super. June 16, 2014))).

As discussed above, though, *McCoy* is not sufficiently analogous to this case. For similar reasons, the other two cases Defendant raises, *White* and *Martinez*, are not illustrative of the emotional distress damages Plaintiff might recover here. In *White*, the plaintiffs filed a claim after they were involved in a two-car accident. 2014 WL 1394317. The defendant insurance company denied the plaintiffs' claim, asserting that "the damages to the vehicle were inconsistent with the accident report." *Id.* At trial, the defendant testified that it denied the claim based on the findings of "an independent forensic engineer who found there was no collision between the two vehicles." *Id.* The jury found that the defendant had acted in bad faith and awarded the plaintiff $326,000 in emotional distress damages. *Id.* And in *Martinez*, not only did the defendant insurance company deny the plaintiff's claim based on an investigator's suspicion of fraud, but it also "instituted a fraud investigation by reporting plaintiff, his entire family including children and an infant, his doctors and his attorney to two national Fraud

Bureaus, prior to any investigation confirming any suspicion of fraud." 2014 WL 3845738. The $600,000 in emotional distress damages awarded to plaintiff in *Martinez* are therefore not indicative of the amount at stake in this action. As with punitive damages, then, Defendant has not provided the Court with sufficiently analogous cases to determine the amount in controversy for emotional distress.

### III. CONCLUSION

In sum, Defendant has failed to prove, by a preponderance of the evidence, that the amount in controversy in this case exceeds $75,000. The Court therefore **GRANTS** Plaintiff's Motion to Remand for lack of subject matter jurisdiction. This action shall be remanded to the Superior Court of the State of California for the County of Los Angeles.

The Clerk is directed to close this file.

**IT IS SO ORDERED.**

Date: May 28, 2024

_____
HON. WESLEY L. HSU
UNITED STATES DISTRICT JUDGE